**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MADISON ROSE LUCEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:26-cv-02884-S-BN |
| | § | |
| AMAZON.COM, INC.; AMAZON DEVELOPMENT CENTER U.S., INC.; AMAZON.COM SERVICES LLC; AMAZON WEB SERVICES, INC.; THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA; and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, | § § § § § § § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA AND BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA'S MOTION TO DISMISS**

Generative Artificial Intelligence used to review and revise brief.

Dated: October 30, 2026

MCDOWELL HETHERINGTON LLP

By: */s/ Andrew R. Kasner*
Andrew R. Kasner
State Bar No. 24078770
Janie Rios
State Bar No. 24126600
Jillian M. Kerr
State Bar No. 24153531

1000 Ballpark Way, Suite 209
Arlington, TX 76011
1001 Fannin Street, Suite 2400
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
Email: andrew.kasner@mhllp.com
Email: janie.rios@mhllp.com
Email: jillian.kerr@mhllp.com

ATTORNEYS FOR DEFENDANTS THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA AND BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA

## TABLE OF CONTENTS

REQUESTED RELIEF AND SUPPORTING GROUNDS ... 1

INTRODUCTION ... 1

BACKGROUND ... 2

A. The allegations against the Insurer Defendants. ... 2

B. Procedural History ... 3

RULE 12(b)(2) MOTION TO DISMISS ... 4

A. Legal Standard ... 4

B. The Court Cannot Exercise Personal Jurisdiction Over the Insurer Defendants ... 5

RULE 12(b)(6) MOTION TO DISMISS ... 9

A. Legal Standard ... 9

B. Count XIV Fails – No Contract to Procure Has Been Breached ... 9

*1. Procurement Duties Belong to Agents and Brokers, Not to the Carrier Asked to Issue the Policy* ... 10

*2. Plaintiff's Claim Is Really a Claim That the Insurer Defendants Had to Accept Her Application, and Pennsylvania Recognizes No Such Duty* ... 11

*3. Plaintiff Pleads Only the Possibility of a Procurement Undertaking, and Her Own Allegations Foreclose One* ... 13

C. Count XV – No Allegation of Promise or Reliance ... 13

*1. There Was No Contract-Like Promise* ... 14

*2. Plaintiff Did Not Change Her Position—She Kept Applying* ... 14

CONCLUSION AND PRAYER ... 15

## TABLE OF AUTHORITIES

**Cases**

*Aresto v. Milie*, 133 A.2d 304, 306 (Pa. Super. Ct. 1957) ........ 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........ 9

*Avondale Cut Rate, Inc. v. Associated Excess Underwriters, Inc.*, 406 Pa. 493, 178 A.2d 758, 760 (1962) ........ 10, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........ 9

*Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) ........ 5

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ........ 7

*Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 918 (5th Cir. 1987) ........ 7

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) ........ 4

*CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) ........ 13

*Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000) ........ 14

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) ........ 4

*Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) ........ 9

*Fischman v. Benefit Ass'n of Ry. Emps.*, 186 A.2d 629, 632 (Pa. 1962) ........ 12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) ........ 5

*Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) ........ 4

*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ........ 7

*Glou v. Security Ben. Ass'n*, 173 A. 883, 886, (Pa. Super. Ct. 1934) ........ 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ........ 4

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ........ 4, 5, 8

*Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) ........ 9

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) ........ 8

*Laventhol & Horwath v. Dependable Ins. Assocs.*, 396 Pa. Super. 553, 579 A.2d 388, 391 (1990) ........ 10

*Luther v. Coal Operators Cas. Co.*, 379 Pa. 113, 116, 108 A.2d 691, 692 (1954) ........ 10

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) ........ 7

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ........ 5, 9

*Munhall v. Travelers' Ins. Co.*, 150 A. 645, 648 (1930) ........ 11

*Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Commw. Ct. 2009) ........ 14

*Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 103-04 (5th Cir. 2018)........... 7, 9

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)................................. 5

*Stelmack v. Glen Alden Coal Co.*, 14 A.2d 127, 130 (Pa. 1940) ................................................ 14

*Thatcher's Drug Store v. Consol. Supermarkets*, 636 A.2d 156, 160 (Pa. 1994)........................ 15

*V-Tech Servs. v. Street*, 72 A.3d 270, 276 (Pa. Super. Ct. 2013)................................................ 14

*W. W. Coal Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 75 Pa. D. & C.2d 621 (C.P. Somerset 1975).... 11

*Walden v. Fiore*, 571 U.S. 277, 284-85 (2014)........................................................................ 5, 6

*Weavertown Transp. Leasing, Inc. v. Moran*, 834 A.2d 1169, 1174 (Pa. Super. Ct. 2003)... 14, 15

*Zayc v. John Hancock Mut. Life Ins. Co.*, 13 A.2d 34, 38 (Pa. 1940) ....................................... 11

**Statutes**

Fed. R. Civ. P. 12(b)(2).............................................................................................................. 4

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 4, 9

Fed. R. Civ. P. 4(k)(1)(A) ........................................................................................................... 4

Tex. Civ. Prac. & Rem. Code § 17.042 ...................................................................................... 4

**Other Authorities**

Insurance Company Search and Detail for Guardian, NEW YORK DEPARTMENT OF FINANCIAL SERVICES, https://myportal.dfs.ny.gov/web/guest-applications/ins.-company-search (then search "The Guardian Life Insurance Company of America") ............................................... 6

Restatement (Second) of Contracts § 33(2) (1981) ..................................................................... 13

Secretary of State Corporation Search for Berkshire, SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS, https://corp.sec.state.ma.us/corpweb/CorpSearch/CorpSearch.aspx (then search by entity name "Berkshire Life Insurance Company of America" or search by identification number "000753326")............. 6

Defendants The Guardian Life Insurance Company of America and Berkshire Life Insurance Company of America (the "Insurer Defendants") file this Motion to Dismiss Plaintiff Madison Rose Lucey's Original Complaint and Jury Demand (Dkt. 3) under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) as follows:

## INTRODUCTION

Plaintiff brings this employment dispute against four Amazon entities. As part of that dispute, Plaintiff folds in two state-law claims against the Insurer Defendants who never employed her, never issued her a policy, and never directed any relevant conduct at Texas. Of the Complaint's fifteen counts, only Counts XIV (breach of a "contractual undertaking to procure" insurance) and XV (promissory estoppel) are asserted against the Insurer Defendants. Both arise from an October 2022 application for an individual disability-income ("IDI") policy that Plaintiff pursued through producers working from a Pennsylvania office, on a proposal identifying Pennsylvania as the issue state.

Both claims against the Insurer Defendants should be dismissed. First, the Court lacks personal jurisdiction over Guardian and Berkshire. Neither is alleged to be "at home" in Texas. And the only Texas connection Plaintiff does allege regarding the Insurer Defendants is her own subsequent relocation to Dallas for Amazon, a unilateral act that cannot, as a matter of law, create specific jurisdiction over a nonresident defendant such as Berkshire or Guardian.

Second, the Complaint fails to state a claim. A claim for failure to procure insurance requires a promise or affirmative assurance that coverage will be procured; it does not lie against a prospective insurer that simply declines to issue a policy on an application it was free to reject. Plaintiff pleads no such promise—she pleads the opposite, that she was told the transaction could not proceed. She also concedes the proposal was "not itself a contract or offer of coverage," that

no premium was paid, and that no conditional receipt for coverage issued. Plaintiff cannot now seek damages for failure to procure a policy that no one promised her would be obtained. Nor can she recover under promissory estoppel, as she has alleged facts supporting neither a promise nor her supposed reliance. The claims against the Insurer Defendants must be dismissed for the reasons discussed below.

## BACKGROUND

### A. The allegations against the Insurer Defendants.[1]

Plaintiff alleges that in October 2022, she sought an IDI policy that she intended to fund personally. (Compl. ¶ 129.) On October 17, 2022, she met by Zoom with Daniel R. Reitz and Brianna E. Belzner, representatives of National Financial Network ("NFN"). (Id. ¶ 130.) According to Plaintiff, NFN "is not a Guardian affiliate," although she alleges that producer materials identified Mr. Reitz as a Guardian financial representative and that a regulatory record lists Guardian as his employer. (Id. ¶¶ 16, 137.)

The resulting proposal Plaintiff received from NFN identified Berkshire as the proposed insurer and Pennsylvania as the issue state for her proposed disability coverage. (Compl. ¶¶ 17, 135.) The application used Amazon's Seattle, Washington corporate address, and the producers worked from an office in Allentown, Pennsylvania. (Id. ¶ 28.) Plaintiff concedes that the proposal "expressly stated that it was not itself a contract or offer of coverage," that no advance premium was paid, and that no conditional receipt for coverage was ever issued. (Id. ¶¶ 134, 136, 182.)

Plaintiff further alleges that the application could not proceed in 2022 while she was treated as participating in Amazon's group disability coverage. (Compl. ¶ 139.) She alleges no further activity until March 2023, when Mr. Reitz reached out to ask whether she had acquired coverage.

[1] Unless otherwise stated, these facts are taken from the Complaint and accepted as true for the purpose of this motion to dismiss only.

(Id. ¶ 140.) Plaintiff also alleges that she relocated to North Texas for a job with Amazon by May 2023 (id. ¶ 141), and that she sustained a disabling condition, which began on or about July 10, 2023 (id. ¶ 152A). Notably, while she alleges she could not obtain IDI coverage with the Insurer Defendants if she had group coverage with Amazon, she can neither confirm nor deny whether she ever had such coverage. In fact, she alleges that a claim for short-term disability through Amazon's plan was processed and denied, and that it was "unsafe to infer that a lack of voluntary election [for Amazon coverage] necessarily meant Plaintiff lacked eligibility or automatic coverage" for Amazon's employment-based disability benefits. (Id. ¶¶ 146A, 146B.)

Despite her then-existing disability, Plaintiff pleads that commencing in September 2023, or two months ***after*** she purportedly became disabled, she attempted again to acquire coverage (this time from Guardian)[2] and that she was looking to satisfy Guardian's underwriting requirements. (Compl. ¶ 143.) Although not pleaded with any semblance of clarity, Plaintiff pleads that one of Guardian's underwriting requirements was the need for a "letter from Amazon confirming that [Plaintiff] did not have Amazon short-term or long-term disability insurance because she had rejected it." (Id.) Plaintiff alleges that she offered "forms of disclaimer, renunciation, verification authorization" (id. ¶ 144), and alleges the insurers never identified an alternative method to prove her nonparticipation in Amazon's employee benefit plans (id. ¶ 145).

**B. Procedural History.**

Plaintiff filed this lawsuit on August 27, 2026. (Dkt. 3.) The Complaint spans more than 100 pages and nearly 200 paragraphs while demanding $70 million in monetary relief. (Compl. ¶ 10; Prayer for Relief.) The action "aris[es] principally from [Plaintiff's] Amazon software-

[2] Plaintiff's allegations initially note an attempt to acquire coverage with Berkshire in late 2022 (Compl. ¶ 135), and subsequent attempts to acquire coverage from Guardian by September 2023 (id. ¶ 142).

engineering employment[.]" (Id. ¶ 1.) Thirteen of the Complaint's fifteen counts assert claims under Title VII, the ADA, the FMLA, and 42 U.S.C. § 1981 against the Amazon entities "only." (Id.; Counts I–XIII.) Plaintiff describes her claims against Guardian and Berkshire as "two narrow, alternatively pleaded state-law claims" arising from "a connected individual disability-income insurance procurement transaction." (Id. ¶ 1.) Count XIV and Count XV are pleaded "[u]nder Pennsylvania law or other governing state law." (Id. Counts XIV & XV.)

## RULE 12(b)(2) MOTION TO DISMISS

### A. Legal Standard.

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a defendant over whom the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A federal court sitting in Texas may exercise personal jurisdiction over a nonresident only if (1) the Texas long-arm statute confers jurisdiction and (2) the exercise of jurisdiction comports with due process. Fed. R. Civ. P. 4(k)(1)(A); *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (internal citations omitted); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). In Texas, the long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, extends to the limits of federal due process. *Johnston*, 523 F.3d at 609. Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction. *Id.* And establishing a *prima facie* case can include "assertions in the plaintiff's complaint." *See Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (internal citations omitted).

Two types of personal jurisdiction exist: general jurisdiction and specific jurisdiction. A court may exercise general jurisdiction over a corporation only where its affiliations with the State are "so 'continuous and systematic' as to render [it] ***essentially at home*** in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (emphasis added). The appropriate forums for a

corporation are the corporation's place of incorporation and its principal place of business. *Id.* at 137; *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (the Fifth Circuit noting that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business").

Specific jurisdiction, in turn, requires (1) that the defendant purposefully directed its activities toward the forum or purposefully availed itself of the privilege of conducting activities there; (2) that the plaintiff's claim arises out of or relates to those forum-related contacts; and (3) that the exercise of jurisdiction is fair and reasonable. *Monkton*, 768 F.3d at 433; *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). The plaintiff bears the burden on the first two prongs. *Seiferth*, 472 F.3d at 271. Critically, the inquiry focuses on "contacts that the 'defendant *himself*' creates with the forum State," not on "the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. And there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (internal quotation omitted); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021).

### B. The Court Cannot Exercise Personal Jurisdiction Over the Insurer Defendants.

No basis exists for the Court's exercise of general jurisdiction over the Insurer Defendants. Plaintiff makes no allegations about where the Insurer Defendants are "at home," and without such allegations she has failed to plead any viable theory of general jurisdiction. *See Johnston*, 523 F.3d at 609. Nor could she make such allegations: Guardian is "at home" in New York, and Berkshire is "at home" in Massachusetts and New York. *See* Insurance Company Search and Detail for

Guardian, NEW YORK DEPARTMENT OF FINANCIAL SERVICES, https://myportal.dfs.ny.gov/web/guest-applications/ins.-company-search (then search "The Guardian Life Insurance Company of America"); Secretary of State Corporation Search for Berkshire, SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS, https://corp.sec.state.ma.us/corpweb/CorpSearch/CorpSearch.aspx (then search by entity name "Berkshire Life Insurance Company of America" or search by identification number "000753326").

As for specific jurisdiction, Plaintiff alleges specific jurisdiction only "to the extent each Defendant, through its own transaction-related conduct, purposefully created contacts with Texas connected to the claims." (Compl. ¶ 27.) Notwithstanding this legal conclusion, Plaintiff alleges no ***facts*** that establish what "transaction-related conduct" the Insurer Defendants undertook in Texas. The only Texas connection Plaintiff identifies is that by May 2023—months after the October 2022 application was submitted through a Pennsylvania office and she received an insurance proposal that identified a potential Pennsylvania policy—she moved to Dallas for her job with Amazon. (Id. ¶¶ 28-29.) That is Plaintiff's unilateral act, not purposeful conduct by the Insurer Defendants, and that unilateral act cannot establish that the Insurer Defendants directed their activities at Texas. *Walden*, 571 U.S. at 284-86. Plaintiff even concedes that "[t]he present record does not establish whether Guardian, Berkshire, Reitz, Belzner, or an underwriter knew of Plaintiff's North Texas/Dallas assignment." (Id. ¶ 30.) This allegation dooms any specific jurisdiction contention Plaintiff advances.

Plaintiff's September 2023 exchange with Mr. Reitz does not help her establish that the Insurer Defendants directed conduct towards Texas either. Mr. Reitz was in Pennsylvania (Compl. ¶ 28), the exchange concerned whether a Pennsylvania application could be reopened (id. ¶¶ 135, 142-43), and Plaintiff concedes she cannot allege that anyone associated with the Insurer

Defendants (or even Mr. Reitz, Ms. Belzner, or NFN) knew she was in Texas (id. ¶ 30). Plaintiff even alleges that by September 2023, when she had reengaged with Mr. Reitz, she "temporarily returned to Pennsylvania for medical treatment," and she signed her operative complaint ***from*** Pennsylvania. (Id. ¶ 141 and Signature Block.)

Nor do Plaintiff's claims "arise out of or relate to" any Texas contact. Every operative event in the insurance transaction occurred outside Texas. Count XIV alleges an "undertaking" formed in the October 2022 application process (Compl. ¶ 183), and Count XV expressly rests on "pre-disability" representations made in 2022. (Id. ¶¶ 192-193, 196.) By Plaintiff's own admission, these events occurred before she relocated to Texas. (Id. ¶ 141.)

At bottom, a defendant cannot purposefully direct conduct at a forum it does not know is involved, and communications that reach a plaintiff wherever she happens to be are not contacts with the forum. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (knowingly contracting with a forum resident and communicating with the resident in the forum are insufficient); *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 103-04 (5th Cir. 2018) (email communications sent to plaintiff while he was in Texas insufficient; plaintiff's own contacts cannot be used to demonstrate the defendant's contacts); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (communications relating to a contract insufficient); *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 918 (5th Cir. 1987) (letter sent to plaintiffs in Texas insufficient where plaintiffs solicited the transaction outside Texas); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (contract with forum resident does not alone establish minimum contacts). *Moncrief* is particularly instructive in this respect.

There, the Fifth Circuit affirmed dismissal for lack of personal jurisdiction because the plaintiff failed to establish the defendant's minimum contacts with Texas. *Moncrief*, 481 F.3d at

315. The plaintiff argued that the defendant established minimum contacts with Texas by "(1) entering into contracts with Moncrief, (2) knowing from the outset that Moncrief [was] a Texas resident, (3) acknowledging and approving of Moncrief's substantial performance in Texas, and (4) sending an executive to visit Texas . . . in furtherance of that performance." *Id.* at 312. The court rejected that argument, explaining that "merely contracting with a resident of Texas is not enough to establish minimum contacts." *Id.* (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). Plaintiff's allegations are even weaker than those in *Moncrief*: she does not allege that anyone from the Insurer Defendants visited her in Texas; she concedes she cannot allege whether the Insurer Defendants even knew she lived in Texas; and she admits that no contract for coverage ever existed. This record does not allow any inference that the Insurer Defendants have sufficient contacts with this state.

Finally, exercising jurisdiction would offend traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 476-77 (considering the burden on the defendant, the forum state's interest, and the plaintiff's interest in convenient relief). Texas has no meaningful interest in a dispute over a Pennsylvania-issue insurance application, pursued through Pennsylvania-based producers, against out-of-state insurers, and governed (under Plaintiff's own theory) by Pennsylvania law. The burden on the Insurer Defendants of litigating in Texas a dispute centered elsewhere is not justified by any forum interest.[3]

[3] Requiring the Insurer Defendants to litigate in Texas raises many other challenges. Among those: presumably there are no witnesses in Texas that have any bearing on the claims Plaintiff brings against the Insurer Defendants. These facts would also support dismissal for improper venue under Rule 12(b)(3).

Because there is neither general nor specific jurisdiction over Plaintiff's claims as to the Insurer Defendants, this Court must dismiss all counts against Guardian and Berkshire for lack of personal jurisdiction.[4]

**RULE 12(b)(6) MOTION TO DISMISS**

**A. Legal Standard.**

This Court may dismiss a claim that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B. Count XIV Fails – No Contract to Procure Has Been Breached.**[5]

Count XIV does not allege breach of an insurance policy. Plaintiff disclaims that any policy issued. (Compl. ¶ 182.) She instead alleges a "separate contractual undertaking to assist in procuring, processing, or completing" disability-income coverage (id. ¶ 183), and invokes the Pennsylvania principle governing an agent's or broker's failure to procure insurance (id. ¶ 184).

---

[4] The Court should also deny any request for jurisdictional discovery Plaintiff pursues. (Compl. ¶ 31.) A plaintiff seeking jurisdictional discovery must make a preliminary showing of jurisdiction and identify what facts discovery is expected to uncover and how they would support jurisdiction. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005); *Monkton*, 768 F.3d at 434. "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). Plaintiff has made no such showing, and in any event, the discovery she proposes could at most reveal knowledge of the Plaintiff's own relocation, which is legally irrelevant to the specific jurisdiction analysis. *See Sangha*, 882 F.3d at 103–04.

[5] Because the proposal identified Pennsylvania as the issue state and the producers worked from a Pennsylvania office, Plaintiff argues for the application of Pennsylvania law. For the purposes of this motion to dismiss only, the Insurer Defendants assess Plaintiff's claims against Pennsylvania law—reserving the right to later assert some other state's or states' laws apply.

That theory fails at every level. A procurement duty belongs to the intermediary who undertakes to obtain coverage from an insurer, not to the insurer being asked to issue it. Any "procurement" duty attributed to the issuing carrier is really a duty to accept the application, which Pennsylvania does not recognize. And, Plaintiff pleads only the ***possibility*** of a procurement undertaking, while her own allegations show none existed.

*1. Procurement Duties Belong to Agents and Brokers, Not to the Carrier Asked to Issue the Policy.*

"[W]here an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under such circumstances as to lull the 'insured' into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed." *Avondale Cut Rate, Inc. v. Associated Excess Underwriters, Inc.*, 406 Pa. 493, 178 A.2d 758, 760 (1962); *see also Luther v. Coal Operators Cas. Co.*, 379 Pa. 113, 116, 108 A.2d 691, 692 (1954). Put simply: the cause of action runs "against [the] broker or agent where the broker 'neglects to procure insurance.'" *Laventhol & Horwath v. Dependable Ins. Assocs.*, 396 Pa. Super. 553, 579 A.2d 388, 391 (1990); *see Aresto v. Milie*, 133 A.2d 304, 306 (Pa. Super. Ct. 1957) ("one who agrees to obtain insurance and neglects to fulfill his obligation becomes personally liable").

Berkshire is not alleged to have been anyone's agent or broker, and the Complaint attributes no act to Berkshire at all. Berkshire appears solely as the "proposed issuing company" named on a proposal that disclaimed being an offer, and Plaintiff seeks to hold Berkshire responsible only "to the extent its own . . . records establish participation." (Compl. ¶¶ 17, 135-136.) But an issuing carrier does not procure its own policy; it decides whether to issue one. Count XIV against Berkshire should be dismissed for this reason alone.

Guardian stands no differently. Plaintiff alleges that materials identified Mr. Reitz as a Guardian financial representative and that a regulatory record lists Guardian as his employer. (Compl. ¶ 16.) But even assuming Mr. Reitz acted as Guardian's legal agent, which Guardian disputes, procurement liability—and any derivative liability of the principal—arises only where the agent "promises, or gives some affirmative assurance," that coverage will be procured. *Avondale*, 178 A.2d at 760; *see W. W. Coal Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 75 Pa. D. & C.2d 621 (C.P. Somerset 1975) ("There must be evidence of a promise or assurance, express or implied, to bring into operation the agent's contractual duty to the applicant.").

Agency here then is irrelevant: irrespective of who the broker served, Plaintiff pleads no promise or assurance that coverage would be procured. In fact, Plaintiff pleads that Mr. Reitz communicated that Plaintiff's acquisition of IDI coverage could not proceed while she was treated as participating in Amazon group disability coverage. (Id. ¶ 139.) Even the September 2023 writing on which Plaintiff relies conditioned any purchase of Guardian coverage on a showing that Plaintiff did not "participate in the group coverage." (Id. ¶ 142.) A statement that coverage cannot be obtained unless an underwriting condition is satisfied—a condition Plaintiff admits she did not satisfy—is the opposite of an assurance that lulls an applicant into believing coverage has been bound. On these facts, there can be no liability for failure to procure, whether against a broker or the carrier. *Avondale*, 178 A.2d at 760.

### 2. *Plaintiff's Claim Is Really a Claim That the Insurer Defendants Had to Accept Her Application, and Pennsylvania Recognizes No Such Duty.*

An application for insurance is "but an offer, which the insurer [is] free to accept or reject." *Munhall v. Travelers' Ins. Co.*, 150 A. 645, 648 (Pa. 1930). "[A] bare offer imposes no liability of any kind upon the person to whom it is made, unless and until it is accepted." *Zayc v. John Hancock Mut. Life Ins. Co.*, 13 A.2d 34, 38 (Pa. 1940). Indeed, "mere delay, however great, in passing upon

an application for insurance cannot be construed as an acceptance thereof by the insurer which will support an action ex contractu, notwithstanding payment of the premium at the time application is made." *Id.*

Here, no premium was ever paid. (Compl. ¶ 134.) And absent a statute or contract, an insurer owes no duty to act on an application, and "negligence and liability therefor cannot be predicated upon a state of facts which does not impose any legal duty." *Id.* (as quoted in *Fischman v. Benefit Ass'n of Ry. Emps.*, 186 A.2d 629, 632 (Pa. 1962)).

Despite the clear state of Pennsylvania law, Plaintiff alleges the Insurer Defendants should have nevertheless advanced her application to issuance. Not so. As Plaintiff alleges, coverage could not issue unless Plaintiff showed she did not participate in Amazon's group disability coverage, and she could not make that showing to the Insurer Defendants' satisfaction. (Compl. ¶¶ 139, 142-145.) The Insurer Defendants were free to establish whatever underwriting standards they desired to enforce, and Plaintiff's failure to satisfy those standards cannot be twisted to force the Insurer Defendants to accept a rejected application. *Glou v. Security Ben. Ass'n*, 173 A. 883, 886 (Pa. Super. Ct. 1934) ("An insurer has a right to accept or reject insurance upon terms and conditions fixed by the insurer").

Nor may Plaintiff obtain "policy-equivalent" damages (Compl. ¶¶ 189-189A) through a procurement theory of relief. The Pennsylvania Supreme Court has rejected attempts "to hold the insurer responsible in damages for the amount of a policy . . . and thereby to accomplish by indirection that which the law has persistently refused to permit to be done directly." *Fischman*, 186 A.2d at 631 (quoting *Zayc*). Otherwise, the law would have no limit. If a carrier could be liable whenever an applicant failed to satisfy its underwriting requirements, every declined, conditioned, or abandoned application would become a claim for the value of a policy that never issued.

#### 3. *Plaintiff Pleads Only the Possibility of a Procurement Undertaking, and Her Own Allegations Foreclose One.*

Even on its own terms, Count XIV requires a contract: the procurement undertaking itself. Plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Here, Plaintiff does not plead the first element; she pleads around it. Indeed, she alleges only that "the complete transaction *may* establish a separate contractual undertaking," (Compl. ¶ 183 (emphasis added)), and relies on it "only to the extent the evidence proves a definite procurement undertaking," (id. ¶ 184). Although Rule 8(d) permits alternative pleading, each alternative must still rest on facts that make it plausible. The facts Plaintiff does plead—a consultation, submission of an application, follow-up questions, and continued communications (id. ¶ 183)—describe the process for applying for insurance coverage, not an agreement to procure coverage.

Nor can Plaintiff state the terms of the supposed undertaking. She describes it in the alternative as a duty to "assist in procuring, processing, or completing" coverage; to "explain the applicable underwriting rule"; to "identify an acceptable cure"; or to process "whatever reduced or supplemental coverage the governing rule actually permitted." (Compl. ¶¶ 183, 185.) Contract terms are sufficiently definite only if they "provide a basis for determining the existence of a breach and for giving an appropriate remedy." Restatement (Second) of Contracts § 33(2) (1981). Plaintiff's shifting, alternative descriptions provide neither: the Court cannot determine what the Insurer Defendants promised to do, let alone whether they failed to do it.

### C. Count XV – No Allegation of Promise or Reliance.

Promissory estoppel requires (1) a promise the promisor should reasonably expect to induce action or forbearance, (2) actual action or forbearance in reliance, and (3) that injustice can

be avoided only by enforcing the promise. *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000); *V-Tech Servs. v. Street*, 72 A.3d 270, 276 (Pa. Super. Ct. 2013). The induced action or forbearance must be "of a definite and substantial character," and the doctrine "cannot be loosely applied; if it were, any promise, regardless of the complete absence of consideration, would be enforceable." *Weavertown Transp. Leasing, Inc. v. Moran*, 834 A.2d 1169, 1174 (Pa. Super. Ct. 2003). These elements are "strictly enforced to guard against the 'loose application' of promissory estoppel." *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Commw. Ct. 2009).

*1. There Was No Contract-Like Promise.*

Promissory estoppel enforces only a "contract-like promise." *Id.* In *Peluso*, the court affirmed dismissal at the pleading stage because the document plaintiffs relied on stated on its face that it could be revoked; it could not be construed as a promise. *Id.* So too here. Plaintiff disclaims any promise that a policy would issue (Compl. ¶ 193), and the proposal for coverage she identifies in her Complaint stated it was not a contract or offer (id. ¶ 136). What remains—that Plaintiff "could proceed toward obtaining" coverage "through the stated application and underwriting process" (id. ¶ 192)—describes the application process itself, and that the transaction could *not* proceed absent Plaintiff providing satisfactory proof that she did not have disability coverage with Amazon. (Id. ¶ 139.) A statement that coverage is unavailable is the antithesis of a promise of coverage.

*2. Plaintiff Did Not Change Her Position—She Kept Applying.*

"The change in the plaintiff's position must be substantial," and there is "no injustice in being deprived of a gratuitous benefit." *Peluso*, 970 A.2d at 533 (quoting *Stelmack v. Glen Alden Coal Co.*, 14 A.2d 127, 130 (Pa. 1940)). Whether enforcement is necessary to avoid injustice turns

on "the reasonableness of the promisee's reliance" and "its definite and substantial character." *Thatcher's Drug Store v. Consol. Supermarkets*, 636 A.2d 156, 160 (Pa. 1994).

This is not a case in which an applicant was assured she was covered and let other protection lapse. Plaintiff alleges the opposite: she was told the transaction could not proceed, and she kept trying. (Compl. ¶¶ 139, 143-144.) She does not allege that anyone told her she was insured, that she canceled or declined other coverage, or that she turned down a competing offer. Her claimed "reliance" consists of reviewing the application, asking questions, and continuing to pursue coverage (id. ¶¶ 151, 195)—i.e., what every applicant does whether or not coverage ever issues. That is not reliance of a "definite and substantial character." *Weavertown*, 834 A.2d at 1174. Count XV should be dismissed, too.

## CONCLUSION AND PRAYER

Plaintiff applied through Pennsylvania-based representatives for a Pennsylvania-issue policy. Her later move to Texas for an unrelated employer cannot hale Guardian and Berkshire into a court that has no personal jurisdiction over them, and in any event, Plaintiff's claims against the Insurer Defendants fail on their own terms.

The Insurer Defendants respectfully request that the Court (1) dismiss Counts XIV and XV against Guardian and Berkshire for lack of personal jurisdiction under Rule 12(b)(2); (2) alternatively, dismiss Counts XIV and XV with prejudice for failure to state a claim under Rule 12(b)(6); and (3) grant the Insurer Defendants all other relief to which they are entitled.

**CERTIFICATE OF SERVICE**

I certify that on October 30, 2026, I served the foregoing on counsel of record via the CM/ECF system, which sends notification of said filing as follows:

Madison Rose Lucey
PRO SE PLAINTIFF
244 Sunrise Drive
Milford, PA 18337
Telephone: (570) 832-3998
E-Mail: MadisonChaitLucey@proton.me

Lauren A. West, Esq.
Ayah Housini, Esq.
ATTORNEYS FOR DEFENDANTS AMAZON.COM, INC.,
AMAZON DEVELOPMENT CENTER U.S. INC.,
AMAZON.COM SERVICES LLC, AND
AMAZON WEB SERVICES, INC.
Morgan, Lewis & Bockius LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
Telephone: (214) 466-4000
E-Mail: Lauren.West@morganlewis.com
E-Mail: Ayah.Housini@morganlewis.com

*/s/ Andrew R. Kasner*
Andrew R. Kasner